# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

JEFFREY T. BRYANT,

        Plaintiff,

v.                                                        Case No. 3:04cv464/MCR

MICHAEL TITZE COMPANY, INC.,

        Defendant.

_____/

## O R D E R

Pending in this cause brought pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq., by plaintiff Jeffrey T. Bryant ("plaintiff") are the motions to compel arbitration filed by defendant Michael Titze Company, Inc. ("defendant" or "the company").[1] (Docs. 6, 25).  Upon review of the parties' submissions and the relevant legal authority, as explained below the court GRANTS defendant's motions.

---

[1] On January 31, 2005, defendant filed a motion entitled "Motion to Dismiss, or in the Alternative, to Compel Arbitration and [for] Stay of Litigation." (Doc. 6, memorandum at doc. 7).  Plaintiff filed a response to this motion (doc. 12, affidavit at doc. 13), including a request to conduct limited discovery, to which defendant filed a reply and supplemental materials (docs. 14, 17).

    On February 25, 2005, defendant moved to prohibit the discovery sought by plaintiff and to suspend the parties' Rule 26 obligations during the pendency of the motion to compel arbitration.  (Doc. 15; plaintiff's response in opposition at doc. 18).  On March 1, 2005, the court suspended the parties' Rule 26 obligations as requested by defendant but authorized limited discovery into the validity and enforceability of the arbitration agreement at issue in this case.  (Doc. 19).  Following the period of discovery, defendant filed its "Renewed Motion to Compel Arbitration" (doc. 25; memorandum at doc. 26; exhibits at doc. 27), to which plaintiff filed a response (doc. 30).

Case No. 3:04cv464/MCR

## Background [2]

Defendant owns and operates the Village Inn Restaurant in Pace, Florida.  Plaintiff began working as a cook in defendant's restaurant on an at-will basis in November 2002, when he was forty-three years of age.  At the time defendant hired plaintiff it provided him with a twenty-three page "employment packet." (See doc. 14-2).  Included in this packet were training materials as well as tax and personal information forms to be completed by plaintiff; the employment packet also contained a document entitled "Arbitration Agreement" which was executed by plaintiff and defendant's representative.[3]  According

---

[2] As discussed below, the court considers defendant's motions to compel arbitration under a standard similar to that employed when reviewing a motion for summary judgment pursuant to Fed.R.Civ.P. 56(c).  In so doing, the court views all evidence in the light most favorable to the non-moving party. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).  Accordingly, the facts recited herein are presented in the light most favorable to plaintiff.
 The parties have submitted affidavits and other materials for the court's consideration in addressing the motions to compel. It is true that in a case in which a district court converts a motion to dismiss to a motion for summary judgment, notice and the opportunity to supplement the record ordinarily must be afforded. See, e.g., Trustmark Insurance Company v.ESLU, Inc., 299 F.3d 1265, 1267 (11th Cir. 2002).  It is not necessary to do so here, however, because the court is not actually effecting a conversion for consideration under Rule 56 but rather is simply applying the Rule 56 standard of review in considering the merits of the motion to compel arbitration. See Hughes v. CACI, Inc., ___ F.Supp.2d ____, 2005 WL 1902427 (D.D.C. 2005).  Furthermore, plaintiff clearly is aware of and has had an adequate opportunity to respond to the relevant factual allegations raised by defendant and all of the evidentiary materials of record.  In addition, the court expressly granted a limited period of discovery for the purpose of developing evidence relevant to the issues raised by the motions to compel arbitration, and the parties – each of whom is represented by counsel – have had both ample time and opportunity to file additional materials and responses.

[3] The arbitration agreement, executed November 15, 2002, provides in pertinent part:

I agree to arbitrate any dispute, claim, or controversy ('claim') against Michael Titze Company, Inc. . . . arising out of my employment or the cessation of my employment which could have been brought before any government administrative agency or court including, but not limited to, claims under the Age Discrimination in Employment Act . . . .  All clams and defenses which could be raised before a government administrative agency or court must be raised in arbitration and the arbitrator shall apply the law accordingly. The Company also has the right to initiate arbitration regarding any matter covered by this [Agreement].  I understand that by signing this Agreement, I am waiving my right to obtain any legal or equitable relief . . . from any government agency or court, and I am also waiving my right to commence any court action.

I understand that any claim for arbitration will be timely only if brought within the time in which an administrative charge or complaint would have to have been filed if the claim is one which could be filed with an administrative agency. . . .

to the allegations of the complaint (doc. 1), while plaintiff was employed at the restaurant both of the general managers under whom he worked repeatedly made ageist comments to him which he found offensive.  Plaintiff complained about the comments, but to no avail; the ageist comments continued.  Plaintiff asserts that based on his age and the complaints he made about the discriminatory comments, defendant reduced his work hours and eventually, on October 22, 2003, terminated his employment, replacing plaintiff with a substantially younger worker. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), which issued him a notice of right to sue on or about December 9, 2004; on December 27, 2004, plaintiff filed the instant complaint under the ADEA in which he asserts one count of age discrimination.

In its motions to compel defendant argues that because plaintiff signed an arbitration agreement which expressly covers claims brought pursuant to the ADEA, this dispute is subject to compulsory arbitration.  Citing the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq., and the Florida Arbitration Code ("FAC"), Fla. Stat. § 682.01, et seq., as well as numerous Florida cases, defendant submits that "both federal law and Florida

---

The arbitration shall be arbitrated by a single arbitrator in accordance with the National Rules for the Resolution of Employment Disputes of the American Arbitration Association ("AAA"). . . . The decision or award of the arbitrator shall be final and binding upon the parties. . . . I agree that any relief or recovery to which I am entitled from any claims arising out of my employment, cessation of employment, or any claim of unlawful discrimination shall be limited to that awarded by the arbitrator.

* * * * * * * * * * * * * *

The terms of this Agreement cannot be orally modified and only can be modified, in writing, signed by the President of the Company and me.

* * * * * * * * * * * * * *

I understand I would not be or remain employed by the Company unless I sign this Agreement.  I have been advised of my right to consult with counsel regarding this Agreement.  My agreement to accept arbitration can be revoked anytime within 7 days of my signing this Agreement, but such revocation must be submitted in writing and will result in my immediate termination . . . .  I have had at least 21 days to consider this Agreement and have decided to sign knowingly, voluntarily, and free from duress or coercion.

(See doc. 6, exh. A).

Case No. 3:04cv464/MCR

law favor arbitration" under the circumstances of this case.[4]  (Doc. 6 at 2). In opposition, plaintiff first argues that the arbitration agreement is an illusory contract and thus unenforceable as there is no mutuality of obligation; he maintains that under the terms of the agreement he promised to arbitrate all claims but defendant did not likewise promise. Second, plaintiff contends that the arbitration agreement is an unconscionable adhesion contract and should not be enforced.  According to plaintiff, the agreement is procedurally unconscionable due to the terms of the agreement which made signing it a condition of his employment and also due to circumstances surrounding its execution.[5]  Thus, plaintiff contends,  he was unfairly "placed in a 'take it or leave it' situation in which he had no opportunity to bargain" and no "meaningful choice" as to whether or not to agree to arbitration. (Doc. 12 at 7-8). The agreement is also substantively unconscionable, plaintiff submits, because under its terms he was required to arbitrate all claims while defendant was not similarly bound; also, the rules under which the agreement calls for the dispute to be arbitrated severely restrict the amount of discovery which may be conducted and thus unfairly favor defendant.  Additionally, plaintiff argues that enforcement of the arbitration agreement could result in his loss of substantial legal rights, i.e., the forfeiture of his entire cause of action.   According to plaintiff, because under the terms of the arbitration agreement any claim for arbitration had to be filed by October 22, 2004, at the latest, he

---

[4]  Thus defendant cites, and generally relies upon, both the federal and state statutory provisions governing arbitration.  Defendant does not, however, specifically identify the authority pursuant to which it brings its motions nor has the plaintiff addressed the question.  Section 2 of the FAA states that a written arbitration "provision in any . . . contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  Although the parties have offered no argument and placed no facts in evidence on this issue, it appears that the arbitration agreement here "involv[es] commerce" and thus falls within the ambit of the FAA.  Regardless, as set forth below, because the court concludes that the relevant analysis under the FAA and the FAC is the same in this case, it does not address this matter further.  That said, the court nevertheless presumes that the relief defendant seeks is pursuant to § 3 of the FAA, which provides for the stay of proceedings in federal district courts when an issue in the proceedings is referable to arbitration.

[5]  These circumstances include that plaintiff was in desperate need of employment when hired; that his formal education ended after the eighth grade; that he was rushed through the process of completing the employment packet and had no real opportunity to review what he was signing; that he was not aware that he signed an agreement in which he gave up valuable rights nor was he given a copy of the agreement; and that he did not even know what arbitration was. (Doc. 14)

was "contractually precluded from filing a claim in an arbitral forum at the time he received his notice of right to sue from the EEOC [on December 9, 2004] and was able to proceed with filing a lawsuit."  (Doc. 12 at 10).

At the close of discovery defendant renewed its motion to compel, reiterating its prior position and pointing in support to evidence obtained in discovery, including the deposition testimony of plaintiff and company president Michael Titze.  (Docs. 25, 27).  In response, plaintiff again argues that the "alleged arbitration agreement is illusory" and that the "alleged agreement is an adhesion contract."  (Doc. 30).  According to plaintiff, the agreement binds defendant to do nothing, can be changed at any time by defendant, and offered employment only on a "take it or leave it" basis.  In short, according to plaintiff, nothing contained in the renewed motion to compel refutes the legal conclusion that no valid agreement to arbitrate exists between the parties.

**Legal Standards**

A motion to compel arbitration is properly reviewed under a standard similar to that applicable to a motion for summary judgment pursuant to Rule 56(c). See Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003) (citing Par-Knit Mills v. Stockbridge Fabrics Co., 636 F.2d 51, 54 n.9 (3d Cir.1980) (stating that "the district court's order to arbitrate is in effect a summary disposition of the issue of whether or not there has been a meeting of the minds on the agreement to arbitrate . . . . ")).  Rule 56(c) provides that a motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

It is axiomatic under federal and Florida law that written agreements to arbitrate are binding and enforceable; if an arbitrable issue exists the court must compel arbitration. Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985); Gale Group, Inc. v. Westinghouse Elec. Corp., 683 So.2d 661, 663 (Fla. 5th   DCA

1996).   Because arbitration can avoid the delays and expenses of litigation, public policy favors it as an efficient means of settling disputes. See Gale Group, Inc., 683 So.2d at 663. "Under both federal statutory provisions and Florida's arbitration code, there are three elements for courts to consider in ruling on a motion to compel arbitration of a given dispute:  (1) whether a valid written agreement to arbitrate exists;  (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived." Seifert v. U.S. Home Corp., 750 So.2d 633, 636 (Fla.1999); see also Gainesville Health Care Center, Inc.v. Weston, 857 So.2d 278, 282-83 (Fla. 1st DCA 2003); accord John B. Goodman Ltd. Partnership v. THF Const., Inc., 321 F.3d 1094, 1098 (11th Cir.2003).  Both the FAA and the FAC permit a challenge to the validity of an arbitration provision based upon any state-law contract defense.  See Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996) (holding that § 2 of the FAA permits "generally applicable contract defenses, such as fraud, duress, or unconscionability, [to] be applied to invalidate arbitration agreements");  Medident Constr., Inc. v. Chappell, 632 So.2d 194, 195 (Fla. 3d DCA 1994) (stating that fraud and other grounds for avoidance or invalidation of a contract may be applied to invalidate an arbitration agreement); Powertel, Inc. v. Bexley, 743 So.2d 570, 574 (Fla. 1st DCA 1999) (finding a contract unenforceable on the ground of unconscionability).  Even in cases in which federal law establishes the enforceability of arbitration agreements, state law generally governs their interpretation. Employers Insurance of Wausau v. Bright Metal Specialities, Inc., 251 F.3d 1316, 1322 (11th Cir. 2001).  Indeed,"[w]hen deciding whether the parties agreed to arbitrate a certain matter . . . courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." First Options of Chicago, Inc., v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995); American Express Financial Advisors, Inc. v. Makarewicz, 122 F.3d 926, 940 (11th Cir. 1996). The proponent of arbitration has the burden of establishing the existence of an enforceable written agreement to arbitrate, see Shearson Lehman Hutton Inc. v. Lifshutz, 595 So.2d 996, 997 (Fla. 4th DCA 1992), while the party seeking to avoid arbitration on the ground of unconscionability bears the burden

of presenting evidence sufficient to support his claim. See Gainesville Health Care Center, Inc, 857 So.2d at 288.

**Discussion**

The parties have not raised an issue either as to waiver of the right to arbitrate or the existence of an arbitrable issue. Accordingly, the court's inquiry involves only the first prong of the three-part test for ruling on a motion to compel arbitration: whether a valid written agreement to arbitrate exists. Gainesville Health Care Center, Inc., 857 So.2d at 282-83; John B. Goodman Ltd. Partnership, 321 F.3d at 1098.

Illusory Contract

Plaintiff argues that the arbitration agreement is an illusory contract and thus unenforceable as there is no mutuality of obligation. Citing the language of the agreement, plaintiff contends that while he is obligated to arbitrate claims defendant is not similarly bound. Moreover, he contends, that defendant's promise to arbitrate is illusory is supported by Mr. Titze's deposition testimony that he can change the terms of the arbitration agreement at any time. (Doc. 30 at 2). Defendant maintains that the agreement is mutually binding but that even if it is not it nevertheless is enforceable because, independent of any agreement to arbitrate, defendant provided consideration to plaintiff by hiring him.

The court shall accept that plaintiff's reading of the arbitration agreement is correct and that by its terms it does not bind defendant to arbitrate plaintiff's claims or its own.[6] Nevertheless, as explained below, the court rejects plaintiff's argument that the arbitration agreement is unenforceable on the ground it is an illusory contract.

---

[6] Under Florida law, "a contract clause should not be interpreted in such a way as to destroy mutuality of obligation and, thereby, invalidate the Contract." Maccaferri Gabions, Inc. v.Dynateria Inc., 91 F.3d 1431, 1443 (11th Cir. 2003) (citing American Medical Int'l v. Scheller, 462 So.2d 1, 8 (Fla.4th DCA.1984)). Here, it may be arguable that the broad phrasing of the second sentence of paragraph one ("All clams and defenses which could be raised before a government administrative agency or court must be raised in arbitration and the arbitrator shall apply the law accordingly") could be read as requiring defendant to submit to arbitration. The court concludes, however, that the more logical and reasonable reading of this sentence, understood in the context of the entire first paragraph, is that defendant was not obligated to arbitrate plaintiff's claims or its own.

Case No. 3:04cv464/MCR

Section 682.02, Florida Statutes, states in pertinent part:

> Two or more parties may agree in writing to submit to arbitration any
> controversy existing between them at the time of the agreement, or they may
> include in a written contract a provision for the settlement by arbitration of
> any controversy thereafter arising between them relating to such contract or
> the failure or refusal to perform the whole or any part thereof.

This statute has been interpreted as allowing two or more parties to arbitrate any controversy, including those controversies in which only one party has the right to arbitrate. See Avid Engineering, Inc. v. Orlando Marketplace Ltd., 809 So. 2d 1, 3 (Fla. 5th DCA 2002).  Moreover, "the so-called requirement of mutuality of obligation is now widely discredited.  It is consideration . . . that is necessary, not mutuality of obligation." Murry v. Zynyx Marketing Communications, Inc., 774 So.2d 714, 715 n.2 (Fla. 3d DCA 2000) (citing Arthur Linton Corbin, Corbin on Contracts  § 6.1, at 197 (Joseph M. Perillo ed., rev. ed.1995) and Restatement (Second) of Contracts § 79, which provides:  "If the requirement of consideration is met, there is no additional requirement of . . . 'mutuality of obligation.'"); see also Avid Engineering, Inc., 809 So.2d at 4; Rohlfing v. Tomorrow Realty & Auction Co., 528 So.2d 463 (Fla. 5th  DCA 1988) (concluding that the defense of mutuality of obligation is nothing more than a "smoke screen"); LaBonte Precision, Inc. v. LPI Industries Corporation, 507 So.2d 1202, 1203 (Fla. 4th  DCA 1987). The doctrine of mutuality of obligation is "merely one aspect of the rule that mutual promises constitute consideration for each other.  Where there is no other consideration for a contract, mutual promises must be binding on both parties. Where there is any other consideration for a contract, mutuality of obligation is not essential." Wright & Seaton, Inc. v. Prescott, 420 So.2d 623, 626 (Fla. 4th DCA 1982).  Thus if there is valid consideration for an agreement, mutuality of obligation is not required. Id.

In this case, the court concludes that defendant gave valid consideration for plaintiff's promise to be bound by the arbitration agreement. As plaintiff himself has argued, the terms of the arbitration agreement made signing it a condition of his employment.  Thus it may be fairly concluded that in exchange for plaintiff's signing the arbitration agreement defendant promised to hire plaintiff.  Additionally, consideration flowed from defendant in

the form of its providing plaintiff with continued employment. In the recent case of Cintas Corporation No. 2 v. Schwalier, 901 So.2d 307, 309 (Fla. 1st DCA 2005), the First District Court of Appeal found that an employment contract containing an arbitration clause was valid and enforceable.  The court stated that  "[a] promise, no matter how slight, qualifies as consideration if the promisor agrees to do something that he or she is not already obligated to do. . . .  Here, the consideration for the contract was the promise of continued employment . . . ."  Id.  (citing Diaz v. Rood, 851 So.2d 843 (Fla. 2d DCA 2003)). Moreover, numerous Florida courts have held that where a contract of employment is terminable at will by either the employer or employee, continued employment is sufficient consideration to support a promise made during the relationship.[7] See Balasco v. Gulf Auto Holding, 707 So.2d 858 (Fla. 2nd DCA 1998) (finding that a restrictive covenant which clearly specified that the agreement was supported by consideration in the form of continued employment was not void); Coastal Unilube, Inc. v. Smith, 598 So.2d 200, 201 (Fla. 4th DCA 1992) (holding that employee's continued employment was adequate consideration to support covenant not to compete entered into after employee had begun employment); South Miami v. Dembinsky, 423 So.2d 988, 990 (Fla. 3d DCA 1982) (holding that, where employment is a continuing contract terminable at the will of either the employer or employee, continued employment constitutes adequate consideration to support an agreement to reimburse training expenses); Tasty Box Lunch Co., Inc v. Kennedy, 121 So.2d 52, 54 (Fla. 3d DCA 1960) (holding that continued employment and agreement to pay commissions are consideration for an agreement not to compete). Finally, the court rejects plaintiff's contention that Mr. Titze's statement that he has the power to change the terms of the arbitration agreement at any time supports a finding that the agreement is illusory.  According to the deposition testimony quoted by plaintiff, Mr.

---

[7] Plaintiff relies on Hull v. Norcom, Inc., 750 F.2d 1547 (11th Cir. 1985), for the proposition that that the arbitration agreement is unenforceable.  In Hull, the court ruled that "the consideration exchanged for one party's promise to arbitrate must be the other party's promise to arbitrate at least some specified classes of claims."  Id. at 1550.  The mutuality requirement in Hull, however, was imposed under New York law. As discussed above, under Florida law continued employment can be sufficient consideration to support a contract, including an agreement to arbitrate. Furthermore, the court notes that the decision in Hull has not been widely accepted. See Wright v. Circuit City Stores, 82 F.Supp.2d 1279, 1284, n.2 (N.D.Ala. 2000).

Titze stated that he could change the employment packet, including the arbitration agreement, prospectively if he so chose.  (Doc. 30 at 2).  Mr. Titze did not state, and there is no evidence before the court to suggest, that he could or would attempt unilaterally to alter the terms of the arbitration agreement retroactively.

Accordingly, for the foregoing reasons the court finds that the arbitration agreement is not unenforceable on the ground it is an illusory contract.  Rather, the court concludes that mutuality of obligation is not required because defendant gave plaintiff valid consideration for his agreement to submit to arbitration in the form of hiring him and/or providing him with continued employment. Further, there is no basis for finding that defendant would seek unilaterally to change the terms of the arbitration agreement retroactively.

<u>Unconscionable Adhesion Contract</u>

According to plaintiff, the arbitration agreement is invalid because it is both procedurally and substantively unconscionable.  Defendant submits that no procedural unconscionability arises from the alleged facts surrounding execution of the arbitration agreement and that no substantive unconscionability exists based on the terms of the agreement itself.

The determination of whether an arbitration clause is unconscionable is a question of state law. <u>Orkin Exterminating Co., Inc. v. Petsch</u>, 872 So.2d 259, 264 (Fla. 2d DCA 2004); <u>see</u> <u>also</u>  <u>Paladino v. Avnet Computer Technologies, Inc.</u>, 134 F.3d 1054 (11th  Cir. 1998). Both procedural and substantive unconscionability must be present in order for a court to exercise its discretion to refuse to enforce an agreement under the doctrine of unconscionability. <u>See</u> <u>Fonte v. AT&T Wireless Services, Inc.</u>, 903 So.2d 1019, 1025 (Fla. 4th DCA 2005); <u>Palm Beach Motor Cars Ltd., Inc. v. Jeffries</u>, 885 So.2d 990, 992 (Fla. 4th DCA 2004); <u>Golden v. Mobil Oil Corp.</u>, 882 F.2d 490, 493 (11th Cir. 1989). The procedural component of unconscionability relates to the circumstances surrounding execution of the contract and involves consideration of such issues as the relative bargaining power of the parties and their ability to know and understand the disputed contract terms. <u>See</u> <u>Powertel, Inc. v. Bexley</u>, 743 So. 2d at 574-75. The substantive component of unconscionability has

to do with the terms of the agreement itself; substantive unconscionability may be found where the contract contains terms which are unreasonable and unfair. See Fonte, 903 So.2d at 1025; see also Gainesville Health Care Ctr., Inc., 857 So.2d at 285 (stating that the test for substantive unconscionability is to determine whether the terms of a contract are so "'outrageously unfair' as to 'shock the judicial conscience.'").  Although substantive and procedural unconscionability are both required in order for the court to find a contract or clause unconscionable, they need not be present to the same degree; rather, the court should employ a balancing approach when considering such claims. See Palm Beach Motor Cars Ltd., 885 So.2d at 992.  "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." Fonte, 903 So.2d at 1025 (quoting Romano v. Manor Care, Inc., 861 So.2d 59, 62 (Fla. 4th  DCA 2003) (citations omitted)).

In the instant case, even accepting that the arbitration agreement is a contract of adhesion,[8] the court finds no evidence of procedural unconscionability based on the circumstances surrounding the agreement's execution or the terms of the agreement which made signing it a condition of employment.  The evidence simply does not support a finding that plaintiff lacked the ability "to know and understand the disputed contract terms." Powertel, Inc. v. Bexley, 743 So.2d at 574-75.  Plaintiff acknowledges that although he has only an eighth grade education he can read and write; he also has earned a GED. (Doc. 27-2, plaintiff's deposition at 4).  Moreover, even if plaintiff had been  "rushed" through the process of completing the employment packet and had no real opportunity to review or absorb what he was signing at the time, the arbitration agreement provides for his revocation of it anytime within seven days of signing. The evidence does not reflect that, despite having this additional time to review the documents, plaintiff sought to exercise his

---

[8] "Generally, an adhesion contract is defined as a standardized contract form offered to consumers of goods and services  on essentially a 'take it or leave it' basis without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or services except by acquiescing in the form contract." Powertel, 743 So.2d at 574. The court is not aware of any Florida cases addressing adhesion contracts in the context of an employment contract involving an arbitration agreement.  Nevertheless, the court accepts that such an arbitration agreement can be – and in the instant case in fact is – adhesive in nature.

right of revocation and he acknowledges that he never requested a copy of the documents. (Id. at 67).  Moreover, that plaintiff was in urgent need of a job put him in circumstances no different than those faced by most job applicants and certainly does not demonstrate that he suffered from being in an unfairly disadvantageous bargaining position.  In short, neither the circumstances nor the terms of the agreement about which plaintiff complains warrant a finding that he was unfairly placed in a "take it or leave it" situation.  Indeed, in Ware Else, Inc. v. Ofstein, 856 So. 2d 1079, 1085 (Fla. 5th DCA 2003), in finding that a forum selection clause in the employment agreement at issue was reasonable,  the court noted that "the vast majority of employment agreements are 'take it or leave it' propositions." Id. at 1082. As was true in Ware Else, Inc., if plaintiff in this case "did not like the terms of the agreement, [he] could indeed have left it."  Id.[9]  For these reasons, the court concludes that  plaintiff has failed to satisfy his burden of demonstrating that the arbitration agreement at issue is unconscionable.  See  Gainesville Health Care Center, Inc., 857 So.2d at 288.

As the court has found no procedural unconscionability, which is necessary before it may decline to enforce the arbitration agreement as unconscionable, it need not address the issue of substantive unconscionability.  Were it necessary for the court to do so, however, the finding in  Palm Beach Motor Cars Ltd., Inc., might give the court pause.  In that case the court noted that "[w]here one party is bound to arbitration of its claims but the other is not, there *can* be substantive unconscionability."  Palm Beach Motor Cars Ltd., Inc., 885 So.2d at 992 (emphasis added).  The court then concluded there was "some" substantive unconscionability because the plaintiff was bound to arbitrate all of her claims but the defendant was not similarly bound. Id.  In the instant case the court recognizes that a similar situation exists, in that it has found that plaintiff was bound to arbitrate his claims while defendant was not.  In light of the finding in Palm Beach Motor Cars Ltd., Inc., in the case at bar this court might feel obliged to likewise find "some" unconscionability in this

---

[9] Powertel, Inc. v. Bexley, 743 So. 2d at 574-75, upon which plaintiff relies, is inapposite. In Powertel, Inc., the court found that an arbitration clause which the defendant had unilaterally added to the service contracts of its cellular telephone customers was procedurally unconscionable because the customers had no opportunity to bargain for the arbitration clause and no power to reject it.

arrangement.  As noted, however, the court is not faced with making such a determination because plaintiff has failed to demonstrate procedural unconscionability.  Furthermore, the court perceives no basis whatsoever for finding substantive unconscionability in any purportedly unfair discovery restrictions.  The Supreme Court considered and rejected a similar argument in <u>Gilmer v. Interstate/Johnson Lane Corp.</u>, 500 U.S. 20, 31, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). In <u>Gilmer</u>, the Court noted that the mere fact that discovery in arbitration proceedings "might not be as extensive as in federal courts" does not render those agreements invalid.  A party seeking to have an arbitration agreement invalidated must show that the discovery provisions in question "will prove insufficient to allow ADEA claimants such as [plaintiff] a fair opportunity to present their claims." <u>Id.</u>  In this case, there is no evidence that any limits placed on discovery under the AAA rules will have such an effect on plaintiff's case.   Nor is the court moved by plaintiff's complaint that he could forfeit his entire cause of action due to untimeliness.  The arbitration agreement clearly set forth reasonable time limits for bringing arbitration claims; that plaintiff elected to disregard the arbitration process established in the agreement and chose instead to proceed by filing a charge of discrimination with the EEOC does not support a finding that the agreement is substantively unconscionable.

In sum, the court finds that the arbitration agreement is neither illusory nor unconscionable but rather constitutes a valid, enforceable agreement to arbitrate. <u>Gainesville Health Care Center, Inc.</u>, 857 So.2d at 282-83; <u>John B. Goodman Ltd. Partnership</u>, 321 F.3d at 1098. Defendant's motions to compel arbitration and stay this case therefore shall be granted.

ACCORDINGLY, it is ORDERED:

1.     Defendant Michael Titze Company, Inc.'s "Motion to Dismiss, or in the Alternative, to Compel Arbitration and [for] Stay of Litigation" (doc. 6) and "Renewed Motion to Compel Arbitration" (doc. 25) are GRANTED.

2.      This case is STAYED pending arbitration proceedings.

3.      The clerk of court shall close this action for statistical purposes but the parties shall file a stipulated report with the court every ninety (90) days from the date of this order advising of the status of arbitration.

**DONE and ORDERED** this 30th day of September, 2005.


s/ *M. Casey Rodgers*

**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

Case No. 3:04cv464/MCR